(No. 6528.   April 23, 1938.)

CHARLES L. SHERWOOD, Appellant, v. THOMAS F. DALY and ANNA B. DALY, Husband and Wife, Respondents.

[78 Pac. (2d) 357.]

J. H. Barnes for Appellant.

Harry Benoit, for Respondents.

HOLDEN, C. J.—On and prior to November 19, 1932, respondents were the owners of certain lands located in Twin Falls county, Idaho. And on and prior to that date, there was of record in that county a mortgage on a portion of said lands, which said mortgage fell due January 1, 1927. The mortgage was not mentioned in the contract hereinafter referred to, but was known to appellant prior to the making of such contract.

November 19, 1932, respondents and appellant entered into a written lease covering the entire tract at a yearly rental of $1,080, with an option to appellant to purchase the property for the sum of $18,000. December 16, 1933, appellant exercised his option. Under the terms of the option, appellant was given the privilege of paying the purchase price either in cash or produce—apples or potatoes. Appellant had the privilege, if he elected to pay the purchase price in cash, to pay it in full or to pay any substantial part thereof. If paid in cash, but not in full, the balance was to draw interest at the rate of 6 per cent per annum. And if appellant elected to pay in produce, he was given the right to limit his payments on the purchase price to the yearly delivery to respondents of two cars of apples or four cars of potatoes, but appellant could, if he chose, deliver larger quantities. Appellant elected to purchase the property and to pay the purchase price in produce.

A dispute having arisen as to the meaning of certain terms of the option, respondent Thomas F. Daly and appellant, April 26, 1935, mutually interpreted the option as follows: "That the total purchase price of said property is $18,000.00; that any unpaid part of said purchase price draws interest at the rate of six per cent per annum from December 16th, 1933, the date when second party (appellant) exercised his option to buy; that the cash value of the two cars of apples or four cars of potatoes, to be computed as in said contract provided, shipped in any one year shall be applied first on the payment of said interest, and any overplus shall be applied

on the principal; that if the cash value of said cars of apples or potatoes in any one year is not sufficient to pay all of the interest due, then the unpaid portion of the interest shall be carried over into the succeeding year or years; that second party (appellant) fully complies with the terms of said option agreement by the shipment of said cars of apples or potatoes, regardless of whether the cash value thereof is sufficient to bring the interest payments up to date, and keeping up the payment of taxes and water maintenance charges levied on said real property.''

During a period of approximately four years following the exercise of said option, appellant paid respondents on the purchase price sums totaling $3,676, and also paid for water maintenance and taxes sums totaling $951.40. Appellant alleges that in addition to the payment of said sums on the purchase price and for water maintenance and taxes, amounting to the sum of $4,627.40, he expended the following sums for the following purposes: ''Budding and cutting back unprofitable varieties of apple trees, $2,560.00; extra spraying required for cleaning up orchard, $1,000.00 extra pruning and cleaning up, $500.00; pulling two acres of unproductive apple trees, $200.00; purchase and installation of electric motors, $188.59; extermination of ants, $170.00; fencing, $114.60; filling and leveling ditches used in irrigating the orchard and substituting the corrugated sod system therefor, $500.00,'' totaling $5,233.19.

June 11, 1937, the owner of said mortgage commenced suit to foreclose his mortgage upon certain legal subdivisions covered by the option contract, making appellant a party defendant and serving him with process. September 17, 1937, appellant commenced this action against respondents to recover damages in the sum of $9,860.59 for the alleged anticipatory breach of said option agreement.

October 4, 1937, respondents interposed a general demurrer to appellant's complaint. October 30, 1937, the court sustained the general demurrer without leave to amend, and entered judgment of dismissal of the action. This appeal is from the judgment of dismissal.

The decisive question is, Did the commencement of the suit to foreclose said mortgage constitute a breach, anticipatory or otherwise, of the executory contract in question?

The pertinent allegations of the complaint are: That appellant has done all of the things and made all of the payments required to be done and paid by him under the terms of the contract of purchase and sale; that he is now and at all times has been willing, able and ready to do and perform all of the things required of him under the terms of the contract; that by the terms of the contract, respondents bound themselves to deliver to appellant, when the full purchase price had been paid, a warranty deed of the property and an abstract showing a marketable title in them, the respondents; that on and before the 19th day of November, 1932, there was of record in Twin Falls county, Idaho, a mortgage against the greater part of the lands described in the contract; that the indebtedness secured by said mortgage was payable in instalments, and that the last of the instalments was due and payable January 1, 1927, but was not paid by respondents or by anyone in their behalf, on that date or at all, but that the interest on said mortgage indebtedness was paid by respondents up to and including January 1, 1936; that on or about the 11th day of June, 1937, the mortgagee, Franklin Squires, brought suit to foreclose the mortgage, making respondents defendants; that service of summons and complaint was made upon respondents; that they made no appearance therein and that judgment by default was about to be taken against them; that appellant was also made a party to said suit, and that service was made upon him; that by reason of the failure of respondents to pay the mortgage indebtedness, whereby the mortgagee became entitled to, and did, bring suit to foreclose the mortgage, respondents breached, abandoned, renounced, and repudiated their contract, and disabled themselves from substantially performing same; that the breach rendered it impossible for appellant to remain in possession of the property and to complete his purchase thereof in accordance with the terms of the contract, to appellant's damage in the sum of $9,860.59.

Appellant contends that the commencement of the suit to foreclose the Squires mortgage constituted an anticipatory

breach of the executory contract in question, in that there is such a breach when a vendor permits anything to be done which apparently will prevent him from substantially performing his contract, and that the immediate cause of the vendor's inability to perform need not be his voluntary act; that it is sufficient if inability to perform is the result of the vendor's previous acts or omissions.

In the case at bar, respondents contracted that if appellant paid the purchase price in full according to the terms of the contract, then they would execute and deliver to him a warranty deed of the property and an abstract of title showing a marketable title in them. The contract fixed no specific date upon which respondents must convey—the date of performance was indefinite and depended wholly upon when appellant would finish paying the purchase price. At the time the foreclosure suit was commenced, appellant had not paid the purchase price in full, either in cash or produce; until the purchase price was paid in full, principal and interest, in cash or produce, performance by respondents was not due. A vendor under a land contract is only required to have the title contracted for at the time performance is due. (*Bozdech v. Montana Ranches Co.*, 67 Mont. 366, 216 Pac. 319; *Lloyd v. Locke-Paddon Land Co. et al.*, 5 Cal. App. (2d) 211, 42 Pac. (2d) 367.)

Bearing in mind that performance of the contract by respondents was not yet due, that a vendor under a land contract is only required to have the title contracted for at the time performance is due, and that the contract had not been breached by any act of the respondents, did the commencement of the foreclosure suit by Squires, a stranger to the contract, constitute a breach or abandonment of the contract by respondents? The commencement of the suit to foreclose the mortgage did not divest respondents of the legal title to the land and thus make it impossible for respondents to perform. They still owned the legal title. When, therefore, as a result of the commencement and prosecution of the foreclosure suit, would it become impossible for respondents to perform? Surely not until title had passed from respondents to another. The passing of title

to someone else would, of course, operate as a breach and abandonment of the contract.

The First District Court of Appeals of California in *Lloyd v. Locke-Paddon Land Co., supra,* passed upon the question as to whether the mere commencement and prosecution of a suit to foreclose a mortgage upon land contracted to be sold, constituted a breach of a contract to sell and convey land. It appears in that case the Land Company entered into a contract with Lloyd to sell and convey certain real property, the purchase price to be paid in instalments. At the time the contract was made, the property was mortgaged. The mortgagee foreclosed its mortgage and caused the property to be sold. The purchaser quit paying the instalments shortly after the suit to foreclose the mortgage was commenced. After the property had been sold, but before the period of redemption expired, the purchaser commenced an action to recover the purchase money instalments he had paid, upon the theory that the vendor had breached its contract by permitting the property to be sold at foreclosure sale, and that he was thereby excused from making further payments. The California court held that merely permitting the foreclosure of a mortgage and sale of the land contracted to be sold did not show a breach of the contract on the part of the seller, and denied a recovery of the purchase money instalments. That court seems to approve the rule that a foreclosure suit must be prosecuted to final judgment and sale of the property on foreclosure, and the period of redemption must expire and deed issue, to constitute a breach or abandonment by a vendor of his contract to sell and convey land. In other words, as we understand that court, it holds that title does not pass from a vendor so as to operate as a breach and abandonment of his contract because of the passing of the title, until the deed has finally issued to the purchaser at the foreclosure sale.

That is not the rule in this jurisdiction. We held in *Northwestern etc. Hypotheekbank v. Nord,* 56 Ida. 86, 50 Pac. (2d) 4, where there is a sale on foreclosure of a mortgage and the sheriff executes and delivers a certificate of sale to the purchaser, that title thereby passes, and the only right or property interest remaining in the mortgagor is

the right to divest the purchaser of his title within a year from the sale by compliance with the redemption statute.

Turning to the complaint in the case at bar, we find that it does not allege any facts showing that respondents permitted the Squires foreclosure suit to be prosecuted to the point of divesting them of title to the property contracted to be conveyed, thereby placing it beyond their power to convey. It does not even appear from the complaint that default had been entered against respondents at the time appellant commenced this action. A sale of the property and the issuance of a certificate of sale would have passed the title and operated as a breach and abandonment of the contract in question, but that is not alleged.

Furthermore, under the statute (secs. 8–301, 8–402 to 8–407, I. C. A.) the holder of a sheriff's certificate of sale is entitled to either the possession of property or to demand rent from the tenant or vendee, as the case may be, in possession, from the date of the sale. In the instant case, appellant was let into possession of the property and was entitled to remain in possession, provided he made the payments of the purchase price in accordance with the terms of his contract. A breach, therefore, would necessarily occur at the moment respondents allowed the property to be sold and thereby permitted the purchaser on foreclosure to be in a position to demand either possession or rent from appellant.

We therefore conclude that this action was prematurely brought and that the judgment must be affirmed, and it is so ordered. Costs awarded to respondents.

Morgan, Ailshie, Budge and Givens, JJ., concur.