(No. 6703.   October 20, 1939.)

EAGLE ROCK CORPORATION, Substituted as Plaintiff in Place of MOUNTAIN STATES BUILDING & LOAN ASSOCIATION, a Corporation, and FIDELITY INVESTMENT CORPORATION, a Corporation, Respondents and Cross-appellants, v. IDAMONT HOTEL COMPANY, a Corporation, GEORGE A. HUSKINSON, ARTHUR PORTER, HUGH A. WRIGHT, H. E. POOLE, M. C. RIGBY, D. H. CLARK and JOHN BUCKMILLER, Appellants.

[95 Pac. (2d) 838.]

W. A. Ricks, for Appellants.

Otto E. McCutcheon and Ralph R. Breshears, for Respondents and Cross-appellants.

BUDGE, J.—The instant action arose from the judgment of foreclosure of a mortgage entered January 19, 1938, the facts of which will be found reported in *Eagle Rock Corp. v. Idamont Hotel Co.*, 59 Ida. 413, 85 Pac. (2d) 242, the opinion filed October 4, 1938, on an appeal from the judgment.

On February 9, 1938, an execution in foreclosure was issued and delivered to the sheriff with directions to sell the property described in the decree of foreclosure and order of sale and the property was advertised for sale.

On March 3, 1938, the Idamont Hotel Company took the appeal from the judgment of foreclosure, above referred to, but gave no *supersedeas* to stay execution.

On March 21, 1938, the sheriff sold the real and personal property described in the mortgage, which was bid in by the Eagle Rock Corporation for the full amount of the judgment entered January 19, 1938, namely: $57,819.70, the sheriff returned the execution fully satisfied and issued to the purchaser, Eagle Rock Corporation, sheriff's certificate of sale.

On October 4, 1938, this court rendered its decision in *Eagle Rock Corp. v. Idamont Hotel Co., supra,* in part as follows:

"The judgment in favor of respondent Eagle Rock Corporation is affirmed, except as with relation to judgment for attorney's fees ($4,000.) to which extent the judgment will be modified and the cause remanded to the lower court with instructions to permit respondent Eagle Rock Corporation to introduce proof in support of its allegation 'that it has incurred the expense and liability to pay its attorney herein a reasonable fee for the collection of said note and for the

foreclosure of said mortgage and the prosecution of this action.' ''

On March 6, 1939, the Eagle Rock Corporation and its attorney recorded in the office of the county recorder of Madison county, and filed with the sheriff, a partial remission of judgment under the terms of which all right to attorney's fees or to prove the contract between the Eagle Rock Corporation and its attorney relative to the fee allowed on the foreclosure were waived. In other words Eagle Rock Corporation voluntarily reduced its judgment $4,000, and waived its claim to attorney's fees, in effect reducing its judgment from $57,819.70 to $53,819.70.

September 14, 1938, Eagle Rock Corporation sold the property to the Fidelity Investment Company, assigning the sheriff's certificate of sale and issuing a quitclaim deed, and on March 21, 1939, the sheriff issued a deed to the Fidelity Investment Company, which deed was exhibited on the same day to M. C. Rigby, president of the Idamont Hotel Company and to Rigby as an individual, possession of the property was demanded and it was refused.

March, 24, 1939, respondents petitioned for a writ of assistance to which appellants demurred and answered. A hearing was had, the matter taken under advisement, and on April 19, 1939, an order for a writ of assistance was signed by the district judge and this appeal was taken from the order granting the writ.

It further appears that respondents on October 1, 1938, paid taxes upon the property in the amount of $7,511.03. It was stipulated that immediately after the sale of the property, prior to the payment of the taxes, appellants were offered the right and opportunity to redeem from the sale by paying the sum of $25,000. Subsequent to October 1, 1938, appellants were offered the right to redeem from the sheriff's sale on payment of $42,000, and thereafter a third offer was made to appellants permitting them to redeem upon payment of $45,000, all of which offers were refused by the appellants, not acted upon nor accepted.

After the order for issuance of the writ of assistance was made and entered, appellants moved for a stay of proceed-

ing and to fix the amount of *supersedeas* bond pending the appeal to which respondents objected. The motion was granted, *supersedeas* fixed, and respondents cross-appeal from each of said orders.

It appears logical to first consider appellants' second assignment of error to the effect that the judge erred in granting the writ of assistance for the reason that he had no jurisdiction to grant such writ in vacation or at chambers.

Section 1–901, subsection 13, I. C. A., providing:

"A district judge may sit at chambers anywhere within his district, and when so acting, has jurisdiction and powers as follows:

" . . . .

"13. *To hear* demurrers and *motions* and other issues of law, and to settle and make up issues of law." (Emphasis inserted.)

appears sufficiently broad to sustain a construction authorizing the hearing of a motion for and the issuance of a writ of assistance by the judge at chambers or in vacation.

"The order in such case . . . . is like an execution or writ of possession in an action of ejectment. The power to grant such an order at chambers . . . . is also recognized in section 402 of the Code of Civil Procedure, where it is provided: '(2) Motions may be made to a judge or justice out of court, except for a new trial on the merits.' " (*Murchison v. Miller*, 64 S. C. 425, 42 S. E. 177.)

"It is lastly objected, that a judge of the circuit court has no power to make such order in vacation—that it can only be in term time; . . . . The first branch of the objection is answered by the statute, which gives to the judges of the circuit court power, in vacation, 'to hear and determine motions . . . . to make all necessary orders to carry into effect any decree previously entered, including the issuance of necessary writs therefor.' " (*Kessinger v. Whittaker et al.*, 82 Ill. 22.)

It is further provided by section 1–1622, I. C. A., that:

"When jurisdiction is, by this code, or by any other statute, conferred on a court or judicial officer all the means necessary to carry it into effect are also given; and in the exercise of the jurisdiction if the course of proceedings be

not specially pointed out by this code, or the statute, any suitable process or mode of proceeding may be adopted which may appear most conformable to the spirit of this code." and section 1-903 provides:

"Before a demurrer, motion or other issue of law is heard at chambers, the party desiring said issue to be heard, shall give at least five days' notice to the opposing party, of the time and place of said hearing."

Subsection 16, section 1-901, I. C. A., provides further that a district judge may sit at chambers anywhere within his district and when so acting has jurisdiction and power:

"16. To try and finally determine all causes in which the parties agree in writing to try the same before the judge at chambers."

While it does not appear that the parties or their counsel prepared by their own hands an agreement in writing to try the motion for writ of assistance before the judge at chambers, the record does contain such a stipulation by counsel which was reduced to writing by the court reporter, reciting:

"THE COURT: Well, on this matter of showing, *you are putting in the showing in support of the answer before the record is made up in respect to the petition.* Mr. McCutcheon, whatever your showing is in support of the petition should precede Mr. Rick's showing.

Mr. McCUTCHEON: Yes; unless he wants to argue his demurrer.

Mr. RICKS: I think the whole thing ought to be presented together. It will only save time. We would have to go over it again.

THE COURT: All right, make up the record, if that is agreeable to both sides, in advance of the demurrer."

We are constrained to hold that the judge was sufficiently clothed with jurisdiction to grant the writ of assistance in vacation and at chambers.

Appellants' remaining assignments of error to the effect that the court erred in granting the order for the writ of assistance for the reasons that the petition fails to state facts sufficient to entitle petitioners to a writ of assistance; that the rights of petitioners in the principle action are still in litigation; that it is inequitable while petitioners are owing

appellants $4,000; that the petition wants in equity, and that appellants' redemption period was cut short, may well be considered together.

A writ of assistance is a form of process issued by a court of equity to transfer the possession of property, and more specifically lands, the title or right to which it has previously adjudicated, as a means of enforcing its decree, and is the appropriate remedy to place in possession the purchaser of property at a foreclosure sale when he is entitled thereto, and a proper occasion arises for employment of the writ when the court has determined the rights and claims as between the parties by a prior valid decree which is final and binding upon the parties affected. (7 C. J. S. 2, 3.)

"The writ of assistance is the appropriate remedy to place in possession the purchaser at a foreclosure sale, and may be issued against any and all persons concluded by such judgment." (*Harding v. Harker,* 17 Ida. 341, 105 Pac. 788, 134 Am. St. 259.)

" 'So it may be said that a writ of assistance performs the same office in a court of equity as does an execution in an action at law. It is nothing more than the process by which the court of equity finally carries its judgment or decree into effect.' (*Escritt v. Michaelson,* 73 Neb. 634, 10 Ann. Cas. 1039, 103 N. W. 300, 106 N. W. 1016.)" (*Berding v. Varian,* 34 Ida. 587, 202 Pac. 567.)

"The power of the court to issue a writ of assistance in this state does not arise from any statute, but from the practice which obtained at common law. This power has always been exercised by courts of equity to place a purchaser of mortgaged premises in possession, after a decree of foreclosure, the expiration of the period of redemption, and the execution and delivery of the sheriff's deed, where the possession is withheld by any party bound by the decree." (*Williams v. Sherman,* 35 Ida. 169, 205 Pac. 259, 21 A. L. R. 353.)

The questions to be determined upon an application for a writ of assistance are set forth in 7 C. J. S. 10, as follows:

"Upon an application for a writ of assistance, no question determined by the original decree can be litigated nor

can the original case be reviewed or the decree therein be modified. The legal or equitable title will not be adjudicated. The sole question to be determined on the motion is whether applicant has a right, as against the party in possession to use the writ to obtain possession. In the absence of any claim of an independent paramount title, the only question on such application is whether the decree has or has not been complied with.''

In the instant case the judgment of foreclosure was expressly affirmed by this court on the appeal from the judgment in *Eagle Rock Corp. v. Idamont Hotel Co., supra,* except as to the judgment for attorney's fees in the amount of $4,000. To this extent the judgment was conditionally modified. There was no reversal of the judgment in so far as the order directing the sale of the property is concerned but to this extent it was affirmed. Appellants have at no time sought and do not now seek to set aside the sale but seek only to recover the sum of $4,000. It would appear from the authorities that where there has been no reversal of the judgment, and no unfairness in the sale, but merely a modification of the amount of the judgment such does not authorize the setting aside of the foreclosure sale. In *Moore v. Boise Land & Orchard Co.,* 34 Ida. 50, 198 Pac. 753, dealing with a situation wherein the judgment appealed from was held to be in part erroneous and modified to such extent this court said:

''Appellant lost no right by the erroneous judgment, except the right to redeem under the statute by paying the amount of the prior liens, exclusive of the McReynolds judgment erroneously declared to be a prior lien, and the right to receive the proceeds of the sale in excess of·such prior liens. Appellant did not seek to set aside the sale, and he would not have been entitled to such relief had he sought it. (*Barnhart v. Edwards,* 128 Cal. 572, 61 Pac. 176. See also, *Falk v. Ferd. Heim Brewing Co.,* 67 Kan. 131, 72 Pac. 531.)''

In *Barnhart v. Edwards,* 128 Cal. 572, 61 Pac. 176, cited in the foregoing opinion, on an appeal from a judgment in foreclosure certain items were deducted from the amount found to be due from plaintiff and the judgment was otherwise affirmed. No undertaking to stay proceedings pend-

ing the appeal had been given, the property was sold in accordance with the judgment, the period of redemption expired and deed issued, and thereafter the court entered an order vacating and setting aside the sale, with respect to which order the appellate court said:

"The judgment under which the sale was made had never been vacated or set aside and the dismissal of the appeal therefrom had the effect to affirm the judgment. . . . . This court made no order setting aside or reversing the judgment appealed from, but its order was limited to a modification of the judgment in accordance with certain specific directions. The rule is well settled in this state that upon the reversal of a judgment a sale to the plaintiff of the defendant's property for the satisfaction of the judgment in whole or in part will be set aside. The reason for this rule is that, as the plaintiff's claim to have the property sold depends upon the judgment, the reversal of the judgment destroys the claim, and takes away all right to retain the defendant's property. The reason for the rule ceases, however, when a judgment directing the sale of specific property, as in the case of the foreclosure of a mortgage to satisfy a lien thereon, is afterwards modified on appeal by merely reducing the amount of the lien without changing that portion which directs a sale of the property. . . . . But, if the judgment directing a sale of property to satisfy a lien is modified by merely reducing the amount of the lien, it cannot be said from that fact alone that the appellant has 'lost' any property so as to authorize the sale to be set aside."

In *Falk v. Ferd. Heim Brewing Co.*, 67 Kan. 131, 72 Pac. 531, an appeal from an order granting a writ of assistance, two mortgages had been foreclosed, judgment having been rendered on both notes and for sale of the property under both mortgages. Judgment of foreclosure on the second mortgage was reversed on appeal. The property was sold at sheriff's sale before a stay bond was executed and the court said:

"Under the circumstances of this case we see no reason for holding that the judgment defendants were entitled to have the sale set aside, much less ignored. Even if the *supersedeas* bond had been given before the sale, the property

could have been sold under the superior judgment, thereby cutting off all rights of defendants in the matter *excepting the right to redeem under the statute by paying the amount of the first lien,* and the right to receive the proceeds of the sale in excess of that amount. These are the only rights that defendants lost or that were suspended by the erroneous judgment against them, and *a complete restoration to these rights did not require the setting aside of the sale,* but resulted from the mere reversal of the judgment. The fact that they have not been exercised does not affect the matter. The district court correctly held that plaintiffs were entitled to be placed in possession of the property.''

The conclusion must be reached herein that the judgment of foreclosure, not having been reversed upon the appeal but simply modified conditionally to the extent of reducing the amount by the elimination of $4,000 attorney's fees, constituted a valid and final judgment which appellants do not seek to have set aside and which it would further appear was not such as appellants were entitled to have set aside upon the showing made.

Respondents' right to a writ of assistance to gain possession of the property, or, conversely, appellants' right to defeat respondents' right to possession, appears to be mainly dependent upon the effect of a sale on execution and delivery of the sheriff's certificate of sale under a valid and final judgment, in the absence of a stay of execution in the manner provided by statute. If appellants desired to stay the execution of the judgment of foreclosure it was their duty to give an undertaking for that purpose in conformity with section 11–207, I. C. A.

''The statute, section 11–207, *supra,* contemplates a full and complete stay of all proceedings on a real estate foreclosure where the *supersedeas* required by order of the court is given.'' (*Great American Indem. Co. v. Bisbee,* 59 Ida. 18, 79 Pac. (2d) 1037.)

See, also, *Mays v. Winstead,* 59 Ida. 677, 86 Pac. (2d) 471; *Berding v. Varian, supra.*

No such undertaking having been given by appellants, respondents were entitled to and received all the right and title incident to a sale on foreclosure and issuance of

sheriff's certificate of sale under a valid and final judgment and appellants' right and title in the property was that remaining after such valid sale and issuance of sheriff's certificate, namely, in appellants' case, the right to redeem by compliance with the statutory procedure, the rule in this jurisdiction being that upon foreclosure sale and the execution and delivery of the sheriff's certificate of sale title passes from the mortgagor to the purchaser.

"When the foreclosure sale was made and respondent bid in the property for the amount of the debt and costs, and the sheriff executed and delivered a certificate of sale, title passed from defendants to plaintiff for the property in question (Sec. 8–310, I. C. A.) and the judgment was thereby paid; there no longer existed any indebtedness from defendants to plaintiff. . . . . The only right or property interest remaining in the mortgagor was the right to divest the purchaser of his title at any time within one year after sale by compliance with the redemption statute. (Secs. 8–310, 8–402 to 8–407, I. C. A.; *Keel v. Vinyard,* 48 Ida. 49, 279 Pac. 420; *Evans v. Power County,* 50 Ida. 690, 704, 1 Pac. (2d) 614; *Steinour v. Oakley State Bank, supra* [45 Ida. 472, 262 Pac. 1052].)'' (*Northwestern etc. Hypotheekbank v. Nord,* 56 Ida. 86, 50 Pac. (2d) 4.)

"Where there is a sale on foreclosure of a mortgage and the sheriff executes and delivers a certificate of sale to the purchaser, that title hereby passes, and the only right or property interest remaining in the mortgagor is the right to divest the purchaser of his title within a year from the sale by compliance with the redemption statute.'' (*Sherwood v. Daly,* 58 Ida. 744, 78 Pac. (2d) 357.)

In view of the effect which must be given in this jurisdiction to a valid foreclosure sale and the issuance of sheriff's certificate of sale, in the absence of a stay as provided by section 11–207, I. C. A., it appears only consistent to conclude that irrespective of any·right appellants might have for recovery from respondents, no such *title in the property* in appellants' favor existed to prevent respondents from gaining possession upon expiration of the redemption period without redemption having been effectuated.

■■ It might also be noted that after the foreclosure sale and issuance of sheriff's certificate of sale the only right or property interest remaining in appellants being the right to divest the purchaser of his title at any time within one year after sale by compliance with the redemption statutes, the question of loss to appellants must be measured with respect to redemption, that is, measured by redemption rights. In this connection it appears that appellants have suffered no loss. Immediately after the foreclosure sale appellants were offered the opportunity and right to redeem upon the payment of $25,000 and thereafter were offered the right and opportunity to redeem upon the payment of $42,000, and $45,000, all amounts being considerably less than the amount of the judgment after deduction of the $4,000 attorney's fees. Furthermore respondents specifically remitted and waived all right to recovery, upon a redemption, of the $4,-000, the amount of the attorney's fees. It further appears that after sale and issuance of sheriff's certificate respondents paid taxes upon the property in the amount of $7,-511.03, which amount, in the event of redemption, appellants would have been required to pay. (Sec. 8–402, I. C. A., as amended, Sess. Laws 1935, chap. 7, sec. 1, p. 20, chap. 106, p. 255, chap. 36, sec. 4, p. 64.)

■ Without passing upon the constitutionality of the statute, it further appears from the provisions of the amendment to section 8–402, I. C. A., contained in chapter 106, 1935 Session Laws, page 255, that in no event need the attorney's fees be included in the amount necessary to redeem unless the provisions of such amendment are complied with, namely:

"provided, in mortgage foreclosure proceedings, the amount necessary to redeem the property sold under execution shall not include any sum for attorneys' fees greater than the fee actually paid by the judgment creditor or which the judgment creditor has by written instrument become unconditionally obligated to pay to his attorney for prosecuting his claim to judgment; and, provided, further, the amount of such fee shall be proven by affidavits of the attorney who has received and the person who has paid the fee or by other competent evidence to be presented to the sheriff for

his guidance in carrying out the provisions of law relating to redemption; and, provided, further, that such redemptioner shall not be required to pay any attorney's fees unless such fees shall have been paid within six months after the sheriff's certificate of sale shall have issued, or within such time the judgment creditor has become unconditionally obligated by written instrument to pay such fees."

Appellants were thus further protected from loss upon redemption by the foregoing provisions.

There is no necessity for passing upon the cross-appeal in view of the foregoing conclusions.

The trial judge was not in error in granting the order for writ of assistance and the same should be and is hereby affirmed. Costs awarded to respondents.

Givens, and Holden, JJ., concur.

Ailshie, C. J., and Morgan, J., concur in the conclusion.

Petition for rehearing denied.